Morning, your honors. David Zucman on behalf of Steven Butcher. I'll do my best to retain a couple of minutes for rebuttal. I think it's fitting that Judge Colon is with us from Illinois. I was thinking about the great Chicago fire of 1871 and Mrs. O'Leary's cow and I wondered if Mrs. O'Leary would be held to the same account that Mr. Butcher was in terms of the damage that resulted from the mislaid lamp put near the bovine animal that apparently sparked the conflagration that consumed Chicago that day in 1871. I don't think they would. That's correct. It did happen in Piru Canyon. There would be no jurisdiction to prosecute it here. I did raise four issues on the appeal. I am hoping that your honors want to have a long discussion about the parsimony clause. I suspect that that is not the case. Well, what clause? The parsimony clause. That is the second aspect of the Sixth Amendment argument that I brought. I brought four arguments on behalf of Mr. Butcher. Parsimony. Pardon? Parsimony. Correct, your honor. The 3553A argument. We love that subject. Excellent. Well, perhaps I will begin there. The government yesterday filed a 28-J letter and as sort of a last point cited the Treadwell case. I, of course, was the lawyer on the Treadwell case so I'm intimately aware of the Treadwell case and the petition for rehearing that I had submitted in that case was denied yesterday without garnering a vote, so I know that your honors are familiar with my Rita-based arguments and they did not persuade you. However, Treadwell did not reach the parsimony argument. It was presented in the briefs in Treadwell, but it was not addressed by the Treadwell opinion. The point brought out in the petition for rehearing, though, did not persuade the panel to actually address the argument. The argument is fairly simple to track. 3553A requires the district court to impose the least onerous sentence under the circumstances. That least onerous sentence is going to change if there are judicially found facts. In other words, if you look at what the jury found, what Mr. Butcher did with respect to the 2002 and 2006 fires, you would have no accounting for wash. You would have none of the guideline-based enhancements were subsumed within the jury's findings. Those findings were done by the district court and those findings, of course, raised the guidelines and necessarily also raised what the district court judge considered to be the least onerous sentence under the parsimony clause. The rule under the Sixth Amendment is that whenever a factual finding is used to increase a defendant's maximum allowable sentence, it is subject to the rule of apprendi. So if the offense simpliciter, the findings of the jury, were used alone in sentencing Mr. Butcher, the maximum parsimonious sentence would not be 45 months. The jury didn't find that he committed all these egregious harms. They just found that he started a couple of fires. The district court's factual findings are what, of course, drove its sentencing. And those factual findings should be subject to the Sixth Amendment requirements by virtue of the parsimony clause. That argument tracks exactly the substantive opinion in United States v. Booker. Now, I understand that it would seem that the conventional wisdom is that Booker is confined solely to binding guidelines and that the only issue addressed by Booker was whether the federal guidelines were constitutional in their current form. But it should be recalled that Booker did not suddenly appear on the scene. It was the logical extension of Blakeley, the state system of guidelines. It is the defense's contention that 3553A operates to create a substatutory maximum, that a district court judge does not have the authority simply to impose the maximum allowable sentence based upon the most mitigated effects. Indeed, that's what substantive reasonableness review prevents. If the district court judge said, I'm going to impose the statutory maximum and run them consecutive on each account, and I'm doing so just because I feel like it, it would be reversed. It would be reversed as a non-parsimonious sentence. So that's the basis of the argument. I suppose I haven't gained any greater traction, but it is the subject of a quite interesting law review note by Steve Hubachek of Federal Defenders of San Diego, which I would commend to your honors. I will now turn to the double jeopardy argument. Let me ask you a couple questions. Please. Now, if there's an order that prohibits building a fire, isn't that fire unauthorized by definition? Yes. Now, the statute here requires, I'm talking about 1855, and the regulations requires that a person willfully set a fire without authorization. And the regulation also requires that a person violate an order prohibiting fire. So we have both of those here. And if it's been shown that an order was violated, then hasn't it been shown, of course, that the fire was unauthorized, and you've agreed to that. But the converse is not true, is it? That a fire could be, there could be no order, for instance, and thus a fire could be set. The CFRs require that an order be issued so that the fire be not permitted, and that is not true under 1855. Is that the essential argument? Well, if you show that a fire was unauthorized, that doesn't necessarily mean that an order or regulation was violated. Correct. I think that's true. One good outcome of the government's 20-AJ of yesterday is that I didn't have a chance to run it past the people that I usually run these arguments past in preparation for an oral argument. So I had to go back and read Blockberger, perhaps for the first time. And it seems to me clear that the double jeopardy analysis of the elements isn't just that there's a theoretical possibility of difference. You know, it seems somewhat reminiscent of the whole Sixth Amendment categorical approach stuff, that it's just not a theoretical possibility of difference that is required, and then, therefore, you have separate offenses. The clearest statement of this was actually in Brown v. Ohio, which in the first, I'm sorry, in the second paragraph says, It has long been understood that separate statutory crimes need not be identical in either constituent elements or in actual proof in order to be the same within the meaning of the constitutional prohibition, citing Bishop. Now, of course, Brown v. Ohio involved joyriding and car theft, two separate crimes. But one is a lesser of the other. And that's the issue we have here. I think in this case, the CFRs or 1855, one is entirely included within the other. It may well be the case that the government can point out that the CFRs require something that 1855 does not. But in this particular case, with these particular elements, there was just one fire. The government is not alleging that Mr. Butcher set separate fires in 2002 and separate fires in 2006. They're contending one fire. Well, does the CFR, the elements necessary to convict under the CFR, are all those elements encompassed in the section? Yes. They are. And there's also an additional one. Correct. Yes, yes. 1855 is entirely encompassed within the CFRs. Yes. So. So. So I win, I think. So you have a situation where the misdemeanor encompasses all of the elements of the felony. Yes, Your Honor. Plus one additional one. Yes, Your Honor. So where does that get you? Well, that gets me back to the district court, the district court to make the determination in the first instance about which conviction ought to be vacated. And I'd cite for that authority the Davenport decision and the Hector decision from this court about the horrible offense of child pornography, where the receipt and possession were both charged and a defendant convicted based on the same material. And the defendant said, hey, I can't have received it without possessing it. And the court said, well, yeah, that's pretty much true. Okay. One of the reasons I'm interested in this, or extra interested in it, is that I was talking to my law clerk the other evening at the office, and we talked about this case. And I said, you know, that reminds me of a case that I had in the early 80s. And the panel was Judge Choi, Judge Reinhart, and myself. And it was a fire that was lit by a hiker who was lost. It was getting dark. And he didn't know where he was. He didn't keep track of his course. And so he built a fire on a rocky ledge. And then I said, I remember the helicopters coming in and kicking up wind. And then the wind had started. And then the whole forest. It was a big forest fire. And that reminds me of this case now. So there's the panel. And there's a time, early 1880, in the early 1980s, and a helicopter. So it turned out to be this United States versus Longer. Yes, Your Honor. Yeah, that's... Cider to the 28-J letter. Yeah. Your Honor, it was also the dissenter on United States versus Kent, which was Cider to the 28-J letters, which I reviewed. What was that about? That was about the woman who had occupied a place in one of the national forests and claimed an aboriginal right to be there. Oh, yeah, yeah, yeah. Right. But I wanted to point out that the one... Well, thanks for reading it. I try to read everything, Your Honor. I did read the Velthe case. I think the Velthe case actually hurts the government. Now, I must admit, I'm very familiar with the Velthe case. A good friend of mine is the lawyer on it. That case is in the district court right now. The last hearing on it was, like, last week. But in Velthe, Judge O'Scanlan said that the reason that 1855 and the CFRs don't conflict, and I'm quoting here, is that the regulations enable the Forest Service to prohibit fires not covered by 18 U.S.C. 1855. And that's the footnote. That's the section cited by the government. If this is true, if the teaching of Velthe is that 1855 and the CFRs cover different things, then Mr. Butcher, they have never contended that he set multiple fires. It is one fire that started in 2002 and one fire that started in 2006. So if the CFRs in 1855 regulate different conduct, he can't get two convictions for the same fire. If they are truly covering separate fires, logically Velthe means he can't be convicted of both. Velthe first them. Now, of course, I would hope that Your Honors would find that this Velthe-based argument is new. It was not raised in the answering brief and, therefore, is dismissed on that basis. But if you don't, at least make the government answer that question. I mean, why doesn't Velthe require the district court to get rid of at least one of those convictions? And I eagerly await the answer. I note that I have a few minutes remaining, so I try to reserve that for rebuttal. Don't start any trouble while you're here. Try not to. Well, let me ask you this. Let's say that the regulation does require willfulness. Because you can't accidentally build a fire. So if you prove that someone willfully built a fire in violation of the regulation, and doesn't that meet all the elements of the felony statute? And do we have a situation where the greater offense is subsumed in the lesser offense? Discuss. Your Honor, the court is referring to the two counts challenged in the second, the 2006 fire, which is the Ellis fire. And just so that I can address the court's specific question, we're dealing with the felony 1855 count, setting timber fire, and we're dealing with the 36 CFR 261.5E. Excuse me, 261.52A. Yeah, whatever it is. Okay. Because the two different challenges deal with two different regulations compared to the 1855. So let me address your question, Your Honor. I would differ with the court on the reading of the willfully, and here's why. Because the actual language of 261.52A that the court refers to reads as follows. When provided by an order, the following are prohibited. Building, maintaining, attending, or using a fire, campfire, or stove fire. And the court has asked me if you should read willfulness into that. I would submit, Your Honor, that there are plenty of circumstances where somebody can enter a campground that was just occupied five minutes ago by somebody that didn't extinguish their campfire. You move into that campground, and you continue to use that fire. You didn't start it. You didn't light it. You didn't build it. But you use it. You maintain it. That is also prohibited by 261.52A and doesn't require any act of willfulness. So I would submit to this court that one cannot read a willful mens rea into 261.52A. Well, what are you looking at now? I've got 261.52A. Yes, sir. 261.52A reads that when prohibited by an order, when provided by an order, the following are prohibited. Building, maintaining, attending, or using a fire, campfire, or stove fire. So to answer the court's question. Maintaining, attending, or using a fire, campfire, or stove fire. Correct. Okay, so you say that that would cover a situation where someone comes upon an abandoned campfire. You just have the coals there. And then put some dry twigs and wood and get the fire going. That would be one situation. But actually the situation I had indicated was where the fire is still burning itself. It has not just been reduced to coals. But somebody enters a campground that has just been abandoned. The fire is going. And then you attend it. You use that campfire. You haven't set the fire, but you have violated 261.52A. Moreover, Your Honor, my beginning point would be. So if you didn't set it, but it's there. You know, it's like the burning bush in the Bible. And you use it. Then you violated that section. Correct. So that's strict liability. Is that what you're saying? It is, Your Honor. And this goes back to the U.S. versus Kent decision, which you were involved in as part of the panel. Which, in fact, determined that 261, a similar statute, 36 CFR 261.6, is strict liability that no mens rea is required. I would also refer the court to the U.S. versus Wilson decision by this court, which found that 261.10 and very similar regulations are also strict liability and do not require mens rea. So I think that this court has already found that these Forest Service regulations are all strict liability and do not require mens rea, even though the court might, in parsing out the language of 261.6. You have a misdemeanor here that includes, well, you would say it doesn't include all of the elements of the felony because the felony requires willfulness. Absolutely, Your Honor. In the government's analysis of the date... And that willfulness came from, basically came from launder. Well, 1855, the felony count states in its textual language that it's a willful violation. The launder case was a violation of 1856. Yeah, I know. And so the felony provision, 1855, requires a willful setting of the fire, whereas the 261.52a does not require any mens rea whatsoever. And so right there, there's a clear difference, an additional element between the felony 1855 and then the 261.52a on the basis of mens rea. So right there, we know that 1855... Well, 1856 is originally drafted, didn't the court use the term willfulness? That's correct, Your Honor. It used the term permit or allow. The context of the launder decision was a fire that escaped an individual's control, and he was charged with the felony violation of 1856. It's the signal fire of which you spoke earlier. And this court read into the terms permit or allow some degree of willfulness. You must take some affirmative action or omission to allow that fire to escape. Here was a guy who was lost in the wilderness, and it was getting dark. He didn't have any poncho or anything to protect himself. He didn't have any food. I don't even know if he had a flashlight.  So he was trying to save himself, and he built it on a rock. And then some wind came up, and then the helicopter came in. Which is the reason... Anyway, my camping days are over. Your Honor, I think that your question is more appropriate when we look to the comparison of the 1855 count in Count 1 to the 261.5e count, which was charged in Count 3. Because the 261.5e count is the count that prohibits causing and then failing to maintain control of a fire that was not a prescribed fire that then damaged the National Forest. Now, the court could much more clearly read willfulness into that, into failing to control. However, the government would not concede that and argues that clearly negligent or reckless conduct would allow a fire to escape control. So if I could return briefly to the comparison of Count 1 to Count 5, which again is the 1855 compared to the 261.52a in the 2006 day fire. Your Honor, Judge Gregerson, I believe that you hit the nail right on the head when you pointed out the difference between causing a fire, setting a fire without authority versus setting a fire in violation of an order. And so when we turn to the 261.52a regulation, it is clear under Blockberger that because it requires that the fire be set in violation of an order, which is a higher requirement than simply without authority, that count requires an element that the 1855 does not. So we've demonstrated that 1855 requires willfulness and that 261.52a requires an order. So clearly they are not the same for the purpose of Blockberger. Moreover, the 1855 is not a lesser included offense and cannot be a lesser included offense because of the written order requirement of the regulation as contended by the defendant. If I may turn then to the first fire, which is the... 1855 can't be a lesser included offense because it's not a lesser offense, it's a felony. Excellent point. You're comparing a five-year felony to a six-month class A misdemeanor. Turning to the 2002... All the sentences on all five offenses ran concurrently. They did, and if I could segue off that, I will quickly jump into the plain error analysis because as the Court is aware, this essentially forfeited challenge must be analyzed under plain error, which is a four-prong test. Because double jeopardy can't be waived, the first prong is clearly met. Under the second prong, though, the plain error is a clear error. And under the case of this Court's case in U.S. v. Smith, cited in the government's brief, plain error is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection. And I would submit to you, Your Honors, that this issue, assuming arguendo, that the Court finds that one or more of these challenges arise to the level of double jeopardy, it is not clear error. Now, the third prong is whether or not the error violated the defendant's substantial rights. Based on this Court's prior rulings, I will concede that. That turns then to the fourth and perhaps the most important prong in my estimation, and that is whether or not, if the other three prongs were satisfied, this Court has the discretion to remedy the error if it, quote, I'm quoting the U.S. Supreme Court pucket, seriously affects the fairness, integrity, or public reputation of judicial proceedings. And, Your Honor, Judge Pragerson, you've hit it right on the point. I submit to you that even if you hit the nail right on the head. With your question about, with your observation that all of this. My father thought I'd be a good carpenter. I'm all thumbs, so I know I wouldn't be. With respect to your observation about the sentences all being concurrent, I think that this ties in clearly to the fourth prong. The defendant was sentenced to 45 months concurrent on the two felonies. He also was sentenced to three concurrent six-month terms for the class B misdemeanors, which are challenged as being in double jeopardy. I would submit that even if there is double jeopardy, which violates the integrity of the proceedings, the fact that the defendant was sentenced to 45 months concurrent on the two felonies does not bring into play or challenge or cast any aspersion on the reputation or the fairness of the underlying proceeding. I have only a minute left. I'd like to turn back very quickly to my analysis of the 2002 fire and point out the different elements under block bourbon. We're dealing with the 1855. We're dealing with the 261.5e, which is causing a fire, failing to maintain control of it, and that thing damages the national forest system. The 1855 contains two elements not found in the regulation, willful and without authority, period. The regulation contains a number of elements different, and that is failing to maintain the fire. The fire escapes control. There is no such equivalent in 1855. And finally, that it damages the national forest. There is no requirement for damage in 1855. With that, Your Honor, I would submit that there is no double jeopardy violation here because the defendant's claims do not pass muster under the Blockburger test, which focuses on a textual comparison and a textual analysis of the statutes and the regulations in question. And when Nixon's court does that and parses out the language, the court will see that each provision requires at least one, sometimes two or three additional elements that the other does not require. And with that, I have five seconds left. And I'd like to submit the remaining arguments on the briefs unless you have any further questions for me. Your three seconds over. Thank you. I apologize. I'll be brief. I think that when you look to the double jeopardy argument, you should look at the elements that the jury was required to find. I put them in my briefs. They are in the ER. The government can talk about all these theoretical differences, but the elements that they submitted to the jury, those are the things that overlap, and there is no denying that they overlap. So if you look at the elements submitted to the jury, which under Brown v. Ohio I believe is the correct way to look at it, there's a double jeopardy violation. Now, whether it's plain error, well, obviously it's plain error. It wasn't raised below, but it is for the district court judge in the first instance to decide which conviction should be vacated. And to the extent that the government's arguing no prejudice, that's just not true. I mean, he's on concurrent terms of supervised release resulting out of these convictions. And under recent case law, I'm blanking on the name of the case, but those violations, if he gets an OSC and gets violated, they can run those terms consecutive so that he faces a substantially longer period of possible incarceration on any supervised release violation. And that's huge. Many of my clients spend much, much more time in prison on their supervised release violations than they do at their first turn at the district court. So that's an unfortunate truth. Finally, Your Honors, the war decision, I think Your Honors need to coordinate that decision to what it was. The imposition of fire suppression costs on Mr. Butcher is ridiculous, and you shouldn't countenance that. And it should be very clear that war deals with a serial arsonist trying to set a huge fire, not some hermit living in a canyon who desperately didn't want to set any fire that would destroy his home. He didn't want to do this. Was there an objection made at the sentencing hearing or hearings as to restitution fire suppression costs in the restitution? Yes. That part was well preserved. They actually had a two-day sentencing hearing. We actually even preserved the Rita and parsimony argument, which never gets preserved. And I was very impressed with the sentencing aspect. I think you should have caught the double jeopardy thing, but that's just me. But, yes, it was definitely preserved. No question. Can you cite to the record? Not off the top of my head, but, I mean, it was a two-day sentencing hearing. It wasn't in the objections to the pre-sentence report. Yeah, Mr. Windsor, I know the counsel for Mr. Butcher. I mean, I read the objections. And, yes, the Apprendi objection was in there, and the fire suppression costs argument was in there. They actually argued over the- In the context of restitution or in the context of loss in calculating the- I'd have to go back. That's a fair question, Your Honor. I'd have to go back and look at the record again. Off the top of my head, I think he did object to all of the restitution, but I'm not sure. I can't say for sure. Well, go back and look at it. Have you got the record with you? I do. Well, I don't have his objections. I mean, his objections are in the CR. So I don't have that part with me. I just cited to this clerk's record as under this Court's rules I'm supposed to do. Yeah, all right. So you get that information to us. I shall. Yes. I'll submit a 28-J by the close of the week. By when? By tomorrow. All right. Tomorrow is fine. Okay. Thank you, Your Honor. All right. Thank you. Appreciate the argument. Good argument on both sides, and the Court will recess until 9 a.m. tomorrow morning. All rise. The Court will recess until 9 o'clock tomorrow morning.
judges: Conlon, Pregerson, Thompson